**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CASE NO. 1:15-cv-_____

KB HOME COLORADO INC., a Colorado corporation;

    Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY;
FIRST MERCURY INSURANCE COMPANY; and
LIBERTY MUTUAL FIRE INSURANCE COMPANY

    Defendants.

**COMPLAINT**

Plaintiff KB Home Colorado Inc. ("KB Home"), by and through its attorneys Palumbo Bergstrom LLP, submits this Complaint against defendants Continental Western Insurance Company, First Mercury Insurance Company and Liberty Mutual Fire Insurance Company. In support thereof, KB Home alleges as follows:

**GENERAL ALLEGATIONS**

1. The Bluffs at Spring Creek Community Association, Inc. (hereinafter "Bluffs HOA") served its first notice of claim upon KB Home on July 16, 2012. As no resolution was achieved during the notice of claim process, the Bluffs HOA filed an arbitration demand against KB Home with the Judicial Arbiter Group on February 6, 2013, bearing JAG case number 2013-0597A (hereinafter "Bluffs Action"). The Bluffs Action involved the Bluffs at Spring Creek condominium development located in Colorado Springs, Colorado (hereinafter "Bluffs Project"), consisting of 20 buildings and 85 units.

2. KB Home and the Bluffs HOA resolved the claims brought by the Bluffs HOA through settlement on July 18, 2014.

3. KB Home incurred approximately $1,038,293.02 in its defense of the Bluffs Action.

1

**PARTIES**

4. Plaintiff KB Home is a Colorado corporation with its principal place of business in Centennial, Colorado.

5. Defendant Continental Western Insurance Company (hereinafter "Continental Western") is an Iowa corporation with its principal place of business also in Iowa.

6. Defendant Liberty Mutual Fire Insurance Company (hereinafter "Liberty Mutual") is a Wisconsin corporation with its principal place of business in Wausau, Wisconsin.

7. Defendant First Mercury Insurance Company (hereinafter "First Mercury") is an Illinois corporation, with its principal place of business in Southfield, Michigan.

8. Continental Western, Liberty Mutual and First Mercury are collectively referred to herein as "Defendants."

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff KB Home and Defendants Continental Western, Liberty Mutual and First Mercury. Further, the amount in controversy exceeds $75,000, exclusive of interest, double-damages, fees and costs alleged.

10. Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because Continental Western and Liberty Mutual are registered to do business in the state of Colorado, and all Defendants regularly conduct business in the state of Colorado by providing insurance coverage for various entities, including those named insureds identified herein, which applies to actions and events which occurred in the state of Colorado.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District. For example, the underlying Bluffs Action was filed by the Bluffs HOA in an arbitration proceeding in Colorado; the work performed by each of the named insureds of Defendants was performed in the state of Colorado; the actions which give rise to coverage under the Defendants policies took place in

Colorado; and because Plaintiff KB Home is both domiciled in the state of Colorado and has its principal place of business in Centennial, Colorado.

### Continental Western – Aspen Retaining Wall Systems, Inc.

12. On May 1, 2006, Aspen Retaining Wall Systems, Inc. (hereinafter "Aspen") entered into a Master Subcontract Agreement (hereinafter "Aspen MSA") with KB Home to construct retaining walls at all projects on which Aspen was to perform work for KB Home.

13. Pursuant to Section 22 and Exhibit "F" of the Aspen MSA, Aspen agreed to procure and maintain comprehensive general liability insurance in favor of KB Home with terms which include: (1) limits of at least $1 million per occurrence, $1 million general aggregate, and $1 million completed operations coverage for property damage; (2) a primary and non-contributory endorsement; (3) blanket contractual liability coverage; and (4) products/completed operations coverage for KB Home pursuant to an additional insured endorsement, form CG 2010 (11/85).

14. Continental Western issued four years of general liability insurance coverage to Aspen under policy number CWP 2585192, effective August 1, 2006 to August 1, 2010 (hereinafter collectively the "Continental Western Policies").

15. KB Home tendered the defense and indemnification of the Bluffs Action to Aspen on November 16, 2012, together with the request that Aspen forward KB Home's correspondence and tender as an additional insured to all of Aspen's insurance agents and insurance companies.

16. KB Home is informed and believes that Aspen forwarded the November 16, 2012 tender of the Bluffs Action to Continental Western.

17. On September 5, 2014, Continental Western verbally advised counsel for KB Home of its acceptance of KB Home's additional insured tender under the Continental Western Policies.

18. On October 8, 2014 and November 3, 2014, KB Home submitted allocations of KB Home's defense fees and costs to Continental Western, together with KB Home's request for

defense funding.  Thereafter on November 26, 2014 and February 25, 2015, KB Home again requested defense funding from Continental Western.

19. Despite its duty to immediately fund 100% of KB Home's defense, Continental Western has not made any payment toward the 20% share of KB Home's defense fees and costs ($225,877.95) which was allocated to it as of November 3, 2014.

### First Mercury and Liberty Mutual – Cornella Brothers, Inc.

20. On July 17, 2006, Cornella Brothers, Inc. (hereinafter "Cornella") entered into a Master Subcontract Agreement (hereinafter "Cornella MSA") with KB Home to perform excavation, backfill, and rough grading work at all projects on which Cornella was to perform work for KB Home.

21. Pursuant to Section 22 and Exhibit "F" of the Cornella MSA, Aspen agreed to procure and maintain comprehensive general liability insurance in favor of KB Home with terms which include: (1) limits of at least $1 million per occurrence, $1 million general aggregate, and $1 million completed operations coverage for property damage; (2) a primary and non-contributory endorsement; (3) blanket contractual liability coverage; and (4) products/completed operations coverage for KB Home pursuant to an additional insured endorsement, form CG 2010 (11/85).

22. First Mercury issued three general liability insurance policies to Cornella, under policy numbers FMMA003611 (effective June 1, 2010 to June 1, 2011); FMMA003611-2 (effective June 1, 2011 to July 1, 2012); and MA-CGL-0000013581-01 (effective July 1, 2012 to July 1, 2013).

23. KB Home tendered the defense and indemnification of the Bluffs Action to Cornella on August 28, 2012, together with the request that Cornella forward KB Home's correspondence and tender as an additional insured to all of Cornella's insurance agents and insurance companies.

24. KB Home is informed and believes that Cornella forwarded the August 28, 2012 tender of the Bluffs Action to First Mercury.

25.     On January 19, 2014, First Mercury agreed to defend KB Home as its additional insured under policy numbers FMMA003611 (June 1, 2010 to June 1, 2011) and FMMA003611-2 (June 1, 2011 to July 1, 2012), pursuant to "blanket" additional insured endorsements to these policies.  First Mercury declined to participate in KB Home's defense under policy number MA-CGL-0000013581-01.

26.     On April 22, 2014, October 8, 2014 and November 3, 2014 KB Home submitted allocations of KB Home's defense fees and costs to First Mercury, together with KB Home's request for defense funding.  KB Home further requested defense funding from First Mercury on July 3, 2014, November 25, 2014 and March 3, 2015.

27.     Despite its duty to immediately fund 100% of KB Home's defense of the Bluffs Action, First Mercury paid only $22,045.98 towards KB Home's defense fees and costs allocated to it as of November 3, 2014.

28.     Liberty Mutual issued two general liability insurance policies to Cornella, under policy numbers YY2-191-433972-026 (effective June 1, 2006 to June 1, 2007); and TB2-191-433972-047 (effective June 1, 2007 to June 1, 2008) (collectively hereinafter the "Liberty Mutual Policies").

29.     KB Home is informed and believes that Cornella forwarded the August 28, 2012 tender of the Bluffs Action to Liberty Mutual.

30.     On March 21, 2013, Liberty Mutual agreed to defend KB Home as its additional insured under the Liberty Mutual Policies pursuant to "blanket" additional insured endorsements contained therein.

31.     On August 30, 2013, April 22, 2014, October 8, 2014 and November 3, 2014, KB Home submitted allocations of KB Home's defense fees and costs to Liberty Mutual, together with KB Home's request for defense funding.  KB Home further requested defense funding from Liberty Mutual on July 3, 2014, November 26, 2014 and March 3, 2015.

32.     Despite its duty to immediately fund 100% of KB Home's defense, Liberty Mutual paid only $35,000 towards KB Home's defense fees and costs allocated to it as of November 3, 2014.

33. Aspen and Cornella are collectively referred to hereinafter as "Named Insureds." The general liability policies described in the preceding paragraphs are collectively referred to hereinafter as "Defendant Policies."

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

34. KB Home incorporates the allegations in paragraphs 1 through 33 of this Complaint above as if fully set forth herein.

35. Pursuant to 28 U.S.C. § 2201, C.R.C.P. 57 and C.R.S. § 13-51-101, KB Home seeks to have the Court determine its rights as to the Defendants' duty to defend and indemnify KB Home as an additional insured relative to the Bluffs Action.

36. KB Home requests the Court to enter declaratory judgment as to the following:

    a. Defendants have a full and complete duty to defend and indemnify KB Home relative to the Bluffs Action under the Defendant Policies which provide coverage to KB Home as an additional insured;

    b. KB Home is entitled to reimbursement of the fees and costs incurred in its defense of the Bluffs Action under the Defendant Policies, including interest on same; and

    c. KB Home is entitled the statutory penalties provided by C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1).

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

37. KB Home incorporates the allegations in Paragraphs 1 through 36 of this Complaint above as if fully set forth herein.

38. KB Home is informed and believes and based thereon alleges that it is and intended and known beneficiary to the Defendant Policies.

39. KB Home is informed and believes and based thereon alleges that Defendants knew that the Defendant Policies were intended to inure to the benefit of KB Home.

40. KB Home is informed and believes and based thereon alleges that KB Home performed all that was required of it to receive the benefits provided by the Defendant Policies.

41.     KB Home is informed and believes and based thereon alleges that Defendants breached the terms and conditions of the Defendant Policies by failing to provide KB Home a full and complete defense of the Bluffs Action as described in this Complaint.

42.     As a direct and proximate cause of Defendants' breach, KB Home was compelled to defend itself against the claims involved in the Bluffs Action without the participation of Defendants.  KB Home would not have been required to fund the extent defense fees and costs incurred but for Defendants' breach of the Defendant Policies.

43.     KB Home is informed and believes and based thereon alleges that the Defendants Policies contemplate the reimbursement and recovery of the fees and costs incurred by the beneficiary of the Defendant Policies to secure defense reimbursement as a part of the beneficiary's recoverable loss pursuant to the Defendant Policies.

44.     KB Home is informed and believes and based thereon alleges that it is entitled to the attorneys' fees and costs incurred in this action as a part of its damages pursuant to Defendants' breach of the Defendants Policies referred to herein.

## THIRD CLAIM FOR RELIEF
**(Equitable Indemnification)**

45.     KB Home incorporates the allegations in paragraphs 1 through 44 of this Complaint above as if fully set forth herein.

46.     Defendants refused to assume KB Home's defense in the Bluffs Action despite the fact that the Defendant Policies afforded coverage to KB Home as an additional insured.

47.     KB Home suffered damages in the form of self-payment of defense fees and costs incurred to defend the Bluffs Action as a direct result of Defendants' refusal to honor their respective contractual obligations to KB Home as an additional insured pursuant to the Defendant Policies.

48.     Pursuant to the Defendant Policies, KB Home asserts that it is entitled to complete indemnification from Defendants to compensate KB Home for the defense fees and costs it incurred and funded relative to the Bluffs Action. To date, KB Home has been reimbursed only a portion of its defense payments, despite Defendants' contractual obligation to fund 100% of KB

7

Home's defense and despite each Defendants' express agreement to defend KB Home against the Bluffs Action.

49. KB Home requests complete equitable indemnification by way of reimbursement from Defendants of all defense fees, costs and expenses that KB Home has incurred in the Bluffs Action, with pre-judgment interest, and together with such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (Equitable Contribution)

50. KB Home incorporates the allegations in paragraphs 1 through 49 of this Complaint above as if fully set forth herein.

51. As an alternative to its Third Claim for Relief for Equitable Indemnification, if KB Home and Defendants are adjudicated to have shared obligations to fund the defense of the claims in the Bluffs Action, Defendants have an obligation to contribute on an equitable basis toward all fees, costs and expenses incurred to defend KB Home in the Bluffs Action in accordance with equitable principles of insurance law and torts.

52. KB Home requests equitable contribution from Defendants toward all fees, costs and expenses that KB Home has incurred in the Bluffs Action, with pre-judgment interest, and together with such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Fair Dealing)

53. KB Home incorporates the allegations in Paragraphs 1 through 52 of this Complaint above as if fully set forth herein.

54. In issuing additional insured endorsements in favor of KB Home as set forth herein, Defendants entered into written agreements with the respective named insureds (the Defendant Policies) by which KB Home is an intended beneficiary. The Defendant Policies provide that Defendants would defend KB Home against damages incurred as a result of a claim for property damage arising from work performed by the respective Named Insured and occurring during the policy term.

55. By operation of law, Defendants owe KB Home, as the additional insured, a duty of good faith and fair dealing. Among other things, the covenant obligates Defendants to put KB Home's interests equal to or ahead of their own interests and to do nothing to prejudice or interfere with KB Home's rights to receive all policy benefits.

56. Despite KB Home's repeated requests for a defense and production of sufficient claim information to each Defendant, Defendants failed to promptly and completely fund or reimburse the defense fees and costs incurred by KB Home in the Bluffs Action.

57. KB Home satisfied its duties to Defendants by providing timely written notice of the claim, by providing requested documentation to assist with the coverage investigation, and by fully cooperating with Defendants in their investigation of KB Home's claim. Moreover, KB Home did not waive any of the duties owed to it by Defendants with regard to its defense or otherwise.

58. Defendants knew that the additional insured endorsements in favor of KB Home were procured and intended for the explicit purpose of benefiting KB Home, in contributing to the alleged damages related to the respective named insured's work at the Bluffs Project, as well as to provide a complete defense in connection with the Bluffs Action under the terms of the Defendant Policies. Acquiring the additional insured endorsements and so benefiting KB Home was the explicit intent of KB Home and the respective Named Insured as stated in the contracts described herein, and Defendants understood this stated and explicit purpose.

59. Rather than honor their respective contractual obligations, Defendants instead sought to protect their own interests and subordinated KB Home's interests by refusing, without reasonable grounds or good cause, to adequately fund KB Home's defense costs incurred in the Bluffs Action.

60. Defendants committed multiple and separate breaches of the covenant of good faith and fair dealing mandated by law and arising out of the Defendant Policies which name KB Home as an additional insured, including, but not limited to:

    a. Failing to acknowledge and act promptly upon communications from KB Home regarding the Bluffs Action;

b. Delaying the investigation of coverage for the claims involved in the Bluffs Action under the Defendant Policies;

c. Failing to fulfill their contractual obligations with KB Home;

d. Unreasonably refusing to pay defense costs incurred by KB Home in the Bluffs Action;

e. Construing the Defendant Policies narrowly in an attempt to avoid or limit coverage for KB Home in the Bluffs Action; and

f. Favoring Defendants' own interests over KB Home's interests and rights to receive the full benefits of the Defendant Policies.

61. Each Defendant's decision to refuse to discharge their contractual duties was motivated by a desire to unfairly enhance their own profits by avoiding their contractual obligations and ignoring the contractual rights and economic interests of KB Home. Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective. Defendants' conduct in this regard breached their duty of good faith and fair dealing owed to KB Home as their additional insured, and recklessly disregarded KB Home's contractual rights and interests.

62. Defendants' conduct as alleged in this Complaint reflects a part of a pattern of unfair claims practices by unreasonably delaying the coverage investigation and wrongfully withholding a defense to KB Home in the Bluffs Action. Such practices systematically deprived KB Home of benefits rightfully due under the terms of the Defendant Policies.

63. As a direct and proximate result Defendants' failure and refusal to defend KB Home, KB Home was required to pay and incur costs and expenses in defense of the Bluffs Action including, but not limited to, litigation costs, attorneys' fees, vendor costs, and consultants' fees.

### SIXTH CLAIM FOR RELIEF
### (Unreasonable Delay Pursuant to C.R.S. § 10-3-1115(1)(a))

64. KB Home incorporates the allegations in Paragraphs 1 through 63 of this Complaint above as if fully set forth herein.

65. Defendants unreasonably denied payment of KB Home's claim for benefits, *i.e.* the defense of the Bluffs Action, which Defendants owed to KB Home under the policies.

66. KB Home is entitled to, and hereby demands pursuant to C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), the covered benefit of all defense costs incurred in the Bluffs Action, plus two times the amount of such covered benefit and reasonable attorneys' fees and court costs incurred herein.

WHEREFORE, KB Home respectfully requests that the Court enter a declaratory judgment with respect to the above claims; that the Court find Defendants responsible for payment of the defense fees and costs incurred by KB Home in the Bluffs Action; that the Court award two times the covered benefit together with attorneys' fees and costs incurred in bringing this Complaint pursuant to C.R.S. § 10-3-1116(1); and that the Court award pre-and post-judgment interest as permitted by law, the foregoing together with all such other relief as the Court deems just and proper.

Respectfully submitted this 30th day of June, 2015.

PALUMBO BERGSTROM LLP

By: _____
Marisa C. Ala, # 38693
Palumbo Bergstrom LLP
9250 E. Costilla Ave., Suite 210
Greenwood Village, CO 80112
(303) 694-0561